Good afternoon. My name is John Osborne, and I'm honored to represent Veronica Ochoa and her two children. In July of 2008, Veronica Ochoa was on her way to work out near Wilcox, Arizona on a two-lane rural highway in a 2000 Ford Focus. When suddenly a deer jumped out in front of their vehicle, her driver, Ms. Mata, swerved and in a wreck that occurred at below highway speeds, the Ford Focus rolled. During that roll, the roof came down on Veronica Ochoa's head and rendered her permanently quadriplegic. She continues to survive in her home in Agua Prieta today. During the trial of this matter, the district judge caused Veronica and her children substantial prejudice by virtually abrogating the law of Dart v. Wiebe on design defect, product design defect, by permitting cross-examination of Brian Herbst, our first and most important liability witness and engineer, with the out-of-court deposition of his partner, another engineer, Steve Forrest, without notice, supposedly for the purposes of impeachment under Evidence Rule 80318, as if this out-of-court deposition in another case that involved an SUV and not a car was a treatise, was an authoritative publication. The judge, as a result of both of these very severe errors, was able to keep out some extremely important evidence and to basically short-circuit the testimony of our primary expert, the first testifying expert in the case, so that at that point, that was pretty much the end in the jury's mind. Did you ask for a limiting instruction? No, Your Honor, and the reason we didn't was because a limiting instruction would have implied that the objection was under Rule 703 of the Federal Rules of Evidence, when that was not even an issue at the time. Well, you could have still asked for a limiting instruction. You were not barred or prevented by Rule 703 from asking for a limiting instruction. So that it would be limited simply to the issue of impeachment? However you wanted to fashion your limitation around it, knowing that it was going to come in, asking the judge actually that it's not coming in for the truth of the matter asserted, but you didn't make any efforts, at least from what I can see in the record. Well, ordinarily, under those circumstances, a limiting instruction, if it's simply for impeachment, is not a requirement of the rule and is not necessary. It would be necessary if it were under Rule 703, but in this case, what we had was an attack upon the credibility of the witness that was then also, in terms of the questioning and in terms of the final argument, transformed into a liability argument that Mr. Forrest had indeed opined that a vehicle with the strength of the Ford Focus would have been perfectly fine in his opinion. But I think your argument is that in the lawyer's closing statement, they argued that this was really admitted for its truth. They were starting to use that cross-examination for its truth, I think is what your point is. So I'm wondering why you didn't ask for a limiting instruction, telling the jury this can't be offered for its truth, at which point I assume they couldn't have made that closing statement argument. Your Honor, because under 803.18, this was presented as a treatise, as something that was permitted for authoritative purposes, and as authoritative, it was by definition something that could be construed both ways. It's fair. It seemed to dwarf into something else. We'll have some questions about that in a little bit to your opposing counsel. But still trying to figure out, your argument here today seems a little inconsistent from what you are arguing at the trial court regarding what occurred with the Berthelsen deposition, because you were trying to get that in sort of in the same reason that the opposing side was trying to get Mr. Forrest's deposition in. So should we consider that your inconsistent sort of position in that regard? Judge Munguia, I agree that that was inconsistent. But we were presented with a district judge who was at least with respect to 803.18 and at least with respect to Dart v. Wiebe off in a different land. I did not understand. I don't think the parties truly understood why so much of that evidence was being kept out when it was in fact relevant to Dart v. Wiebe in terms of the post-2000 evidence from Volvo and so forth. But moving back to the Berthelsen stuff, why something that immediately preceded the institution of the Federal Motor Vehicle Safety Standard that was still in effect and governed the design of the Ford vehicle, the basic essence of our defect claim, would not be qualified under the same analysis. I'm not sure if I would have objected to 803.18 as strenuously had the judge done the same thing for one side as the judge did for the other. But the judge didn't do that. And that's part of the substantial prejudice that permeated this trial. Well, permeated. Let's talk about that. Because for you to succeed, let's just assume that it was error for the district court to allow that reference to the partner, Mr. Forrest, to come in. The deposition was not entered into evidence. Correct. The deposition transcript wasn't read to the jury. No, I disagree with that. Go ahead, please. Well, there was questions regarding what was said, and they were phrased based on what the lawyer was looking at. But I don't recall that it was specifically read to the jury. It seems like it was an exchange of a couple of questions about opinion concerning the roof strength and whether to take a case with a certain strength-to-weight ratio. That's the way I read it. I'm trying to figure out why those references would have tainted the entire verdict. Why, because of those references, would the jury, in light of everything they heard, this was a 17-day trial in which they heard a lot of other testimony regarding roof strength. Why would this have affected the outcome? The testimony by Mr. Forrest in the deposition, which was presented to Mr. Herbst to look at while the cross-examination was done, was that your partner of many, many years, Mr. Forrest, would never take a case against a three-time strength-to-weight ratio vehicle. Now, that was as close to verbatim out of that deposition as you could possibly get. Well, but there was a lot more testimony, I imagine, in that deposition that could have been read and referred to. It seems like they did hone in on the part that they wanted to. And again, let's say that that was improper. Answer my question. Why was that prejudicial? Because that's the essential issue right there, is whether a three-times strength-to-weight ratio vehicle, with a federal standard of 1.5 times the weight being sufficient, what Ford was trying to see. Sure, and he was one witness regarding that. But the evidence that the jury heard in this very lengthy trial, in this sad case, as you've identified, the result being the victim here seriously injured. But the jury heard that the strength-to-weight ratio was designed to have a 2.88 ratio. They heard that it was actually a 3.05 ratio. The federal motor vehicle safety standard passing test is 1.5 strength-to-weight ratio. There was a lot of other evidence surrounding this. I'm trying to figure out why this reference to the one expert on part of this, and the reference that your partner might have said something differently, or did say something differently, regarding an entirely different case, would taint all the evidence that came in and the jury's verdict. Because it's the central issue in the case. And when your partner says, I wouldn't take this case, you have destroyed... It is impeachment. It destroys the credibility of the expert. It's impeachment of one witness when there were many that went to this scene. I don't disagree with you that this was a very important issue in the trial, but there were a lot of witnesses that testified, and there was a lot of evidence that was offered up regarding the strength-to-weight ratio. Only one plaintiff's witness on that issue, Mr. Herbst, was the only structural engineer, mechanical engineer, able to address that issue. If and to the extent any other witness did it, it was collaterally. Mr. Herbst was there to carry the plaintiff's burden of proof. Once this undisclosed, unanalyzed, inability... I mean, we had no way to even meet it. But Mr. Herbst had an opportunity. I guess he went ahead and explained or discussed why his opinion was different from Mr. Forrest's. All he could do was generalize and speculate, Your Honor. I know, but he said specifically that he didn't see the deposition they were talking about. He qualified that he doesn't know for sure why that might have been said, and that was not his opinion, and yet he made some references to why his opinion would have been different. Well, he was caught completely off-guard and had absolutely no substantive knowledge of the information about which he was being examined. That is the height of ambush. It's trial by ambush. It is contrary to what the federal rules are all about, and it is severely prejudicial in a trial case. Did you want to reserve... I'm sorry. I just was wondering. I understand in this trial the jury got to ask questions, and they asked questions about several different things. Did they ever ask about the partner, Forrest's, views? Not to my knowledge, Your Honor. I do not remember any questions in that respect. Moving on, I will reserve about three minutes. It looks like I've got three and 40. You know, those are the two egregious examples of what happened in this case, gutting our product liability case and misusing and completely taking 803.18, completely contrary to all the principles of 803.18. I mean, you can go out and look at these Ohio cases, O'Brien v. Angley and so forth, the in-ray welding cases. The use of 803.18 here was just wholly, wholly wrong. So say we agree with you about that. Couldn't we find that it was proper impeachment otherwise, if it hadn't been called a treatise? I don't think so, Your Honor. I don't think that you can suddenly come up with the deposition of an out-of-court witness and then start using it for the substance of the document. Well, what if it's not offered for its truth, though? If you're just asked, look, you work with someone who seems to disagree with you. We're not saying that the jury should listen to that on its own for its truth, but we're wondering how you explain how you and your partner have – why wouldn't that be proper impeachment? I know of no rule that permits that to be proper impeachment under these circumstances. I would have to look at the rule. It wasn't cited by Ford. I have the only two reasons, 803.18 and 703. I would have to speculate, but I don't believe that there's anything whatsoever that would permit that use of this, both from disclosure purposes, 803.18 and rule 703. The judge also acted to exclude Mr. Kamm, who was an expert on the political nature of FMVSS 216. That was wrong. I don't want to forget the fact that also the jury was never instructed that manufacturers are held to a standard of experts in this case, and they should have been. It was unclear. It was ambiguous from the instruction that was given. The evidence that was kept out was multiple and completely prejudicial to the plaintiff's case. Veronica was done wrong in this case. The importance of 803.18 and the Forrest impeachment is highlighted by the fact that this case was tried once without that impeachment and was tried once with. The jury hung the first time around, and the second time they ruled against Veronica. I submit to you that you have to also consider the cumulative error rule because when you count all this stuff up, this case was against all fair legal justice. Thank you. Good afternoon. Emily Quatto of Horvitz and Levy on behalf of defendant Ford Motor Company. Over the course of a 16-day trial, plaintiff had a full and fair opportunity to present a lot of evidence on the key things she had to prove to establish liability in this case. Let's talk about what we've been talking about. I appreciate your introduction. Help me understand your basis for admitting Mr. Forrest's opinion from another case. Rule 703. I don't understand it. It deals with expert testimony. You also cite in your brief United States versus Presadio Gomez, but those authorities are more about facts relied on by an expert. This was ambush, plain and simple. You relied at trial based on treaties. That is clearly you didn't do that in your brief. I think you step back from that because you recognize that that was not the proper basis to pursue this line of questioning. At trial, they pulled out this deposition, caught him cold, and started asking him about the opinions of his partner. Was he asked about this at his deposition? I don't know his deposition transcript. Well, you're here. You're expected to know the record, Ms. Quatto, and so that kind of a response does not go far. So tell me, do you know and is there in the record whether or not this was presented at the deposition? At the deposition of Brian Herbst? Yes, where you would have had an opportunity at that point in time to see if he would adopt this or explain it. That didn't happen. When he was on the stand at trial, trial counsel asked him if he relied on his forest's opinions. And under Rule 703, it's always appropriate to cross-examine an expert upon the basis upon which they've reached their conclusions. Did they ask him that at the deposition? The deposition is not part of the record. I know that, but that's what I'm trying to figure out. So they just asked him if he relied on his partner. It doesn't look like they gave him any advance notice regarding this and basically then put in the reference of his partner saying something different, his business partner saying something different. I'm just trying to figure out how that was appropriate impeachment testimony. Because it's always appropriate to cross-examine an expert for the basis of their opinion. And so when Herbst had testified categorically that a roof needed to have at least a 4-to-1 strength-to-weight ratio, and the foundation was laid at trial to show that he relied on forest's opinions, and once the district court had heard that— In what sense did he say he relied on forest's opinion? Can you point to the transcript to the way in which he said that? Sure. So starting on page 258 of the excerpts of record, trial counsel was laying foundation to show that Mr. Forest and Mr. Herbst had worked together for many years, they had co-authored many papers, and that he believed Mr. Forest's testimony was reliable and that his opinions and conclusions are the sort of information upon which he formed his own opinions. It's an unusual case, but here, the district court, upon hearing the testimony of Herbst— I don't think he ever—I mean, you're paraphrasing, but I don't recall him ever saying that his opinion about the roof in this case was based on forest's opinion about the roof in this case. He never said that, right? Right. He testified more generally that he and forest shared opinions. In general, that they agreed about things,  Well, correct. And so in the context, the district court heard what Herbst had to say about whether he shared what forest's opinions, and the district court determined in its discretion that Herbst had testified that he found the opinions reliable. And so Ford did proceed to ask him to explain how he could say categorically that a four-to-one strength-to-weight ratio or something more is necessary when he and his business partner would agree that in some cases a three-to-one strength-to-weight ratio is sufficient. But if the court believes that the foundation wasn't appropriately laid and that he needed to testify more specifically, that he relied on the specific deposition transcript, again, we come back to should it have been admitted, and if it shouldn't have been admitted, was the error prejudicial. Talk about that a little bit. The error was not prejudicial. This was only a few questions out of a very long examination. Herbst's testimony went on for hundreds of pages, and it was very clear both through how he explained his own opinions through the lens of being cross-examined. So once confronted with Forrest's opinions, he explained, yes, well, we agree on many things, but here's why I don't think a three-to-one strength-to-weight ratio is always enough. But it wasn't just limited to the question, and there was an explanation. The closing argument is you need to discuss that because defense counsel brought up the Forrest opinion during closing arguments, you know, basically to call into question the credibility of Mr. Herbst. One of the last things the jury heard was that an expert who didn't testify in this case thought that this case should not have been brought. This seems to really compound the error or admitting inadmissible hearsay. So how does that not rise to the level of presidential error? Two responses. First, because no limiting instruction was requested, the hearsay objection ultimately can be waived, and defense counsel was able to argue because no limiting instruction was requested. But also the reference to Forrest— But they did object to the hearsay. They did object to the line of cross-examination. True, but ultimately they talked about hearsay, and then Forrest's counsel said, but also it's impeachment. And the district court said, ah, that's what I thought you would say. And that was where the district court said, okay, I'm going to overrule the objection. So the district court understood that it was coming in for purposes of impeaching Herbst on the basis of whether his opinions were supported by a sufficient foundation. And once it came in for that purpose, a limiting instruction should have been requested in order to prevent counsel from arguing in closing about the substantive nature of the testimony. But in any event, it wasn't at the end of the closing argument. It was in the middle of the closing argument, and a very long argument that undermined Herbst's credibility on many more important issues that were much more fundamental to the jury's verdict in this case. Well, but you heard your opposing counsel here, Mr. Osborne, say that this was central to the case. This witness, Mr. Herbst, was, you know, very important. Why then doesn't it amount to tainting the verdict? Because the strength-to-weight ratio was really only a very small aspect of this case, and there was volumes of evidence about whether three-to-one was sufficient from Herbst himself and from many other witnesses, including all of Ford's automotive engineers. But, I mean, Herbst, to the extent this would have impacted... But Ford's engineers were saying it was strong enough, and Herbst was saying it wasn't. So he, your opposing counsel, is saying Herbst was our key witness, our only witness, he is saying, on the idea that the roof, that three-to-one was not enough. If we believe, just hypothetically, that this cross-examination undermined Herbst, can you point to any other plaintiff witness who made that argument in addition to Herbst? Well, I think Carly Ward, their causation expert, also testified about roof strength, and Herbst testified about roof strength not just with the three-to-one ratio, but all sorts of other information. And when confronted with this testimony about the three-to-one, he was able to explain and even further explain on redirect how strength-to-weight ratio is important, but it's definitely not the decisive factor in determining whether a roof was defective. So once Herbst had testified to that and said... And so, you know, even with a three-to-one strength-to-weight ratio, the car is not... didn't have a sufficiently strong roof because it wasn't appropriately tested for many of the other reasons that he put forth. He was able to get his opinion across to the jury very well. And I think if the jury discredited Herbst, it was not on the basis of this very minor portion of his testimony. It was on other aspects of his testimony that were inherently incredible, such as the fact that he used a testing methodology that has been rejected by the Society of Automotive Engineers. He had a, frankly, implausible view that this catastrophic accident was basically the equivalent of coming to rest at a stop sign, and that his career focused on litigation consulting, and he'd never once designed an automobile. There were so many bases for impugning Herbst's credibility that I think the very astute jurors who asked many questions and very skeptical questions of plaintiff's witnesses came to the conclusion that they didn't believe what he had to say about the roof strength, but it wasn't because of the forest impeachment. It was because his opinions were frankly implausible on pretty much every topic upon which he testified over two days. Let me suggest to you that I have a struggle trying to relate this to a situation in which an expert has relied on certain facts. This was not part of this witness's study of this case. You have suggested that it's admissible because it was his partner's opinion in some other case. Now, if you were to prevail on your claim that there was no error involved in asking this question or being permitted to ask this question, how would you fashion a rule that would permit it? What would you have to say that a witness who is an expert or permitted to testify as an expert has to defend on cross-examination everything that everybody else has said on another occasion that he happens to respect? I think you could fashion a very narrow rule that applies when you're talking about an expert who his CV lists all of his articles on this topic. Most of them are co-authored with the forest. And when an expert specifically testifies that my partner... I'm sorry, you said co-authored? His, not the witness, the other guy. Right. Co-authored. The rule I would propose is that if an expert witness testifies that there's somebody upon which he has specifically relied to form his opinion... Let me stop you there. Do you have evidence in here that he said, I specifically relied on this guy? He said, I find... He said he shares his opinions and that they were developed... That was in the abstract. That was not with respect to any issue in this case. Well, I think in context, the district court understood him to have said he found those opinions reliable. If you disagree with that reading of the record, then I would agree that we would need a rule that would... He needs to have testified that he relies on it. If you disagree with that the record shows that, then it was not permissible to admit it, but we then do the prejudicial error analysis because trials don't have to be perfect. I know, but I'm talking about for openers. This looks like something that is permitted by no rule of law or no rule of evidence or no custom or usage or anything. Ford, I'm going to assert, knew better than to ask these questions. Well, I think in the particular context of Herbst and Forrest, who we deal with in every case, it is... They constantly are relying on each other's opinions and they rely on the same materials. And so under the unique facts of this particular expert and his partner, I think Ford was relying on materials upon which we rely in every case. You are in a unique position in that you didn't try the case. Correct. You're arguing it and defending it on appeal, but you do have to defend it. Can I ask you, what's your best case to support a determination that admitting this hearsay to impeach a witness is harmless? Is there one that you can point to? That is harmless. I mean, I think any of the harmless error cases that we cited in our brief... Well, give me your best one. I mean, I would say also the Hanford case, which explains why when an expert testifies that he's relied on testimony that is in that deposition testimony, then it's admissible. But also... But Hanford says that expert testimony from another case is hearsay. I'm surprised you're saying that. I think it goes against what you're saying, doesn't it? Well, I think the corollary to what Hanford says... So Hanford says that it's admissible hearsay when an expert has not relied on it. So the corollary to that would be when an expert has relied on it, it would be appropriate impeachment. And I think there's a reason that the Hanford case focuses on the reliability element, whether it has been testified to be reliable, because that is what distinguishes... But I don't think... I mean, I think the question... What we're concerned about is what if we read this record as he did not rely on his partner's testimony. So Hanford doesn't help you out of that. You need a harmless... I think the question was, do you have a case where impeaching someone improperly is considered harmless error? I'm not sure which case I've cited that goes to that, but I would be happy to provide the court with that authority if the court would require it. Thank you. I see that I'm out of time if the court has any other questions. Mr. Osborne, I think you might have less than a minute, 48 seconds. 48 seconds, to be precise, Your Honor. Thank you. Your Honor, this will open floodgates if you permit this behavior by Ford, regardless of what their history is, which is not a part of the record, it will absolutely open the floodgates. And it will go contrary to decades and decades of authority in this area. What happened in this transcript at 79 is, how about his opinions on matters of Ruth's strength? And now specifically, would you believe based on the 20-some-plus years that you have worked with him and your knowledge of his engineering judgment, would you consider his opinions to be reliable? Answer, generally, yes, I would say that. Again, we don't agree on absolutely everything, but certainly I think our opinions have been consistent in the past. Now, what that's trying to do is tell you that Mr. Forrest is an encyclopedia. I've been presented this book, and as part of my foundation, I'm saying that book is generally authoritative. What Ford's trying to do is put Mr. Forrest up as an encyclopedia that somebody can just vouch for being generally reliable, and then off we go. That's floodgates, Your Honor, and we can't permit that to happen. Thank you. Yes. Thank you both for your arguments here today. Very helpful. We are going to take a brief recess at this time. We will resume in just a moment.
judges: Leavy, Murguia, Friedland